**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **DAN LEPORE & SONS COMPANY,**[1] | : | **Case No. 25-14757 (___)** |
| | : | |
| **Debtor.** | : | |
| | : | |

**MOTION OF DEBTOR FOR AN ORDER PURSUANT TO 11 U.S.C. § 363(c)
AND FED. R. BANKR. P. 4001 AUTHORIZING DEBTOR TO USE CASH
COLLATERAL AND PROVIDE ADEQUATE PROTECTION**

Dan Lepore & Sons Company (the "Debtor"), by and through its proposed counsel, Karalis PC, hereby moves this Court, pursuant to § 363 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order Pursuant to 11 U.S.C. §363(c) and Fed. R. Bankr. P. 4001 Authorizing Debtor to Use Cash Collateral and Provide Adequate Protection, (the "Motion") and in support thereof, avers as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of the Debtor's Chapter 11 case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein are § 363 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

[1] The last four digits of the Debtor's federal tax identification number are (3562). The Debtor has an address at 501 Washington Street, Conshohocken, PA 19428.

## BACKGROUND

4. On November 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under Title 11 of the Bankruptcy Code.

5. Since the Petition Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. A description of the Debtor's business and the facts precipitating the filing of its Chapter 11 proceeding is set forth in the Declaration of Gregory J. Lepore in Support of Chapter 11 Petition and First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

## PRE-PETITION FINANCING PROVIDED TO THE DEBTOR BY WELLS FARGO BANK, NATIONAL ASSOCIATION

### A. The Line of Credit Note.

7. On December 9, 2024, Wells Fargo Bank, National Association ("Wells Fargo") extended credit to the Debtor, as borrower, evidenced by a Promissory Note dated December 9, 2024 in the original principal amount of $2,500,000.00 with a step-down credit provision effective as of May 30, 2025, reducing the principal maximum loan amount from $2,500,000 to $2,000,000 (the "Line of Credit Note") [Loan No. 5468787443]. The Line of Credit Note was amended and restated on October 1, 2025 to extend the maturity date of the Line of Credit Note from October 1, 2025 to January 29, 2026.

8. The Line of Credit Note evidences a revolving line of credit. The Debtor was able to borrow, repay and reborrow under the Line of Credit Note and Wells Fargo was able to advance and re-advance under the Line of Credit Note from time to time.

9. The amounts outstanding under the Line of Credit Note bear interest at a floating rate per annum which is equal to the sum of (A) the Index (as defined in the Line of Credit Note) plus (B) a Margin (as defined in the Line of Credit Note), resulting in an initial rate of 7.750%. Accrued interest was due and payable on the same day of each month with the outstanding principal balance and any accrued but unpaid interest due and payable on the maturity date of the Line of Credit Note.

10. The maturity date of the Line of Credit Note is January 29, 2026.

11. As of the Petition Date, the balance owed under the Line of Credit Note was in the approximate amount of $1,600,000.

**B. The Alleged Security Interest held by Wells Fargo.**

12. Pursuant to the terms of the Commercial Security Agreement dated December 9, 2024 (the "Security Agreement"), in order to secure the Debtor's obligations under the Line of Credit Note, the Debtor granted to Wells Fargo, among other things, a security interest in any and all of the inventory, chattel paper, accounts, equipment and general intangibles of the Debtor of any nature whatsoever (the "Collateral").

13. Wells Fargo alleges that it perfected its security interest in the Collateral by the filing of its UCC-1 financing statement with the appropriate governmental agencies.

14. On or about August 9, 2012, Wells Fargo filed with the Secretary of the Commonwealth of Pennsylvania UCC-1 Financing Statement No. 2012080902942 naming Dan Lepore & Sons Company as debtor and asserting a security interest in the following:

> The following described property whether now owned or hereafter acquired and any additions, replacements, accessions, or substitutions thereof and all cash and non-cash proceeds and products thereof.
>
> Description of Collateral:

> All of the personal property of debtor of every kind and nature, without limitations, all accounts, equipment, accessions, inventory, chattel paper, instruments, investment property, documents, letter of credit rights, deposit accounts and general intangibles, wherever located. Any term which is defined in the uniform commercial code [UCC] has the meaning given to the term in the UCC.

15. UCC-3 Continuation Statements were filed by Wells Fargo (a) on February 15, 2017 at File No. 2017021500553 and (b) on February 24, 2022 at File No. 2022022401283.

**USE OF CASH COLLATERAL**

16. The Debtor is contacting Wells Fargo regarding the Debtor's use of cash collateral and adequate protection to be afforded to Wells Fargo after the Petition Date to see if an agreement can be reached. In the event no agreement is reached by the hearing date, the Debtor is requesting that the Court authorize the use of cash collateral.

17. The Debtor, in the normal course of its business, incurs obligations to suppliers for a variety of goods and services and to its employees which are essential to the continued existence of the Debtor as a going concern. Absent the immediate authority to use its cash the Debtor does not have the funds with which to conduct business.

18. The Debtor requires an immediate hearing to at minimum authorize the use of cash collateral for immediate expenditures and operating expenses. Due to the intervening holidays, the Debtor has prepared an 8-week budget (the "Budget") of its expected revenue from operations and operating costs which is attached hereto as "Exhibit A" and made a part hereof.

19. Moreover, the Debtor's next payroll comes due on November 26, 2024. An abrupt cessation of the Debtor's business would cause extreme hardship to the Debtor's customers, its creditors, and employees. Simply stated, in order to continue the operation of the Debtor's business, it is necessary for the Debtor to immediately be authorized to use its cash collateral.

20. It is also crucial that the Debtor's post-petition payroll obligations be paid as these obligations come due.

21. The Debtor must maintain its relationship with its employees so that the essential services they provide are uninterrupted. If the Debtor's present employees terminate their employment, the Debtor will be forced to hire new, untrained employees. As a result, clients will receive less than satisfactory service. The Debtor will suffer negative publicity and its relationship with its creditors could also be jeopardized.

## RELIEF REQUESTED

22. The Debtor requests that the Court authorize the Debtor to use (a) cash, (b) proceeds of the pre-petition collateral, and (c) such other funds that the Debtor obtains post-petition which may be subject to Wells Fargo's pre-petition security interest.

23. The Debtor requests authority to use cash collateral in the amount to be set forth in the Budget.

24. The use of cash collateral is necessary in order for the Debtor to be able to operate and pay its post-petition obligations as they come due.

25. Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor, its estate and creditors.

26. In accordance with Bankruptcy Rule 4001, the Debtor requests that the use of cash collateral first be preliminarily approved and then subsequently be finally approved at a subsequent hearing upon further notice to parties in interest.

27. In accordance with Bankruptcy Rule 4001, the Debtor requests that the final hearing be scheduled so that at least fourteen (14) days-notice has been provided to parties in interest.

28. The entry of any Order authorizing the use cash collateral is without prejudice to the rights of the Debtor, its creditors, any trustee appointed herein, or other party in interest, to contest the validity, extent or priority of any rights granted pursuant to any pre-petition loan agreement or any security interest arising out of or related to any pre-petition loan agreements.

29. Neither the Debtor's use of cash collateral nor any payments that may be authorized by the Court to Wells Fargo constitutes a waiver by Wells Fargo or the Debtor or any other party in interest of any right or claim each may now have or in the future have with respect to any issue relating to the validity, extent or priority of Wells Fargo's security interests.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order granting the Motion and for such other relief as the Court deems just and appropriate under the circumstances.

**Respectfully submitted,**

**KARALIS PC**

By: /s/ Aris J. Karalis
ARIS J. KARALIS
ROBERT W. SEITZER
ROBERT M. GREENBAUM
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
akaralis@karalislaw.com
rseitzer@karalislaw.com
rgreenbaum@karalislaw.com

*Proposed Attorneys for the Debtor*

Dated: November 21, 2025