**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **DAN LEPORE & SONS COMPANY,**[1] | : | **Case No. 25-14757 (___)** |
| | : | |
| **Debtor.** | : | |
| | : | |

**DECLARATION OF GREGORY J. LEPORE IN SUPPORT OF**
**CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Gregory J. Lepore, declare under penalty of perjury:

1. I am the, President, director and fifty (50%) percent shareholder of Dan Lepore & Sons Company (the "Debtor"), a Pennsylvania corporation, a debtor and debtor-in-possession in the above-captioned Chapter 11 case. In this capacity, I am generally familiar with the Debtor's day-to-day operations, organization, financial affairs, and books and records.

2. On November 21, 2025 (the "Petition Date"), the Debtor filed a voluntary bankruptcy petition with the United States Bankruptcy Court for the Eastern District of Pennsylvania under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code").

3. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of the Debtor's management and employees, and the Debtor's advisors. I am authorized to submit this Declaration

[1] The last four digits of the Debtor's federal tax identification number are (3562). The Debtor has an address at 501 Washington Street, Conshohocken, PA 19428.

on behalf of the Debtor and, if called upon to testify, I would testify competently to the facts set forth herein.

5. I submit this Declaration (a) to provide an overview of the Debtor and this chapter 11 case and (b) in support of the Debtor's chapter 11 petition and "first day" motions (each, a "First Day Motion" and collectively, the "First Day Motions") and the relief requested in the proposed orders therein, which have been filed to minimize the adverse effects of filing for chapter 11 protection and to enhance the Debtor's ability to maximize the value of its estate.

## BACKGROUND

### A. The Debtor's Business

Background

6. The Debtor is a for profit corporation that was incorporated as of January 26, 1970.

7. The Debtor is a third-generation masonry restoration and construction company, dedicated to the execution of complex, large scale or historic projects for a national clientele. The Debtor works with industrial, commercial and institutional clients. The Debtor assesses and repairs structural failures, implements design/build projects, rigging, scaffolding, and preserves the historic fabric of some of the most iconic buildings in the nation.

8. The Debtor has developed a unique array of trade and professional skills and is able to assemble the most comprehensive integrated project teams available for both masonry construction and restoration.

9. Throughout the Debtor's long history and the evolution of building technologies, the debtor has maintained a progressive and innovative approach to the masonry business. The company takes enormous pride in its venerated craftmanship and is committed to providing its clients with the highest level of service and skill.

10. The Debtor's principal place of business is located at 501 Washington Street, Conshohocken, PA 19428.

**B. The Debtor's Corporate Structure**

11. As noted above, the Debtor, Dan Lepore & Sons Company, is a privately held for-profit corporation. All outstanding shares of common stock are owed by Gregory J. Lepore (50%) and Julius D. Tarsi (50%).

**(1) Pre-Petition Financing provided to the Debtor by Wells Fargo Bank, N.A.**

12. The Debtor's only secured lender is Wells Fargo Bank, National Association ("Wells Fargo"). As of the Petition Date, the secured financing debt represented by a revolving line of credit note owed by the Debtor to Wells Fargo was in the approximate amount of $1,750,00 secured by the Debtor's inventory, chattel paper, accounts, equipment and general intangibles. The Wells Fargo revolving line of credit has a maturity date of January 29, 2026.

**(2) The Debtor's General Unsecured Debt.**

13. As of the Petition Date, the Debtor's general unsecured trade debt is in the approximate amount of $3,121,000. In the ordinary course of business, the Debtor incurred unsecured indebtedness to various trade vendors and service providers, among others.

14. As of November 18, 2025, the value of the Debtor's assets is approximately $8,171,950 and consist of cash $217,500, accounts receivable $6,815,450 – including retainage of 3,583,950, and equipment with a book value of $1,139,000.

**C. Circumstances Giving Rise to this Bankruptcy Case**

15. The circumstances leading to this Chapter 11 case are attributable to the recent denial by Hunter Roberts Construction Group ("Hunter Roberts") of the Debtor's request for additional compensation, inclusive of change orders, in the approximate amount of $2.6 million

(detailed in the Preliminary Assessment of Delays and Disruptions incurred by the Debtor) for masonry work performed by the Debtor on the St. Joseph's University Sister Thea Bowman Hall Project ("Bowman Hall Project") pursuant to the September 2023 subcontract between the Debtor and Hunter Roberts (the "SJU Subcontract").

16. The Bowman Hall Project has been a challenging project since the start. From the outset, Hunter Roberts, and/or the owner of the Bowman Hall Project, caused an initial five (5) month delay precluding the Debtor from timely starting this project. The parties to SJU Subcontract also agreed to a construction and sequencing schedule that was neither realistic or feasible and resulted in numerous disruptive scheduling and sequence changes which significantly extended the duration of the project, creating costs that far exceed the original estimates.

17. As of September 30, 2025, the Debtor had incurred a loss under the SJU Subcontract of approximately $4,000,000 which was primarily funded by the Debtor's assets, and there still remains an additional elevation to be completed at an estimated cost of $800,000.

18. Even though the value of the completed work delivered by the Debtor to Hunter Roberts is substantially greater by millions of dollars than the SJU Subcontract amount of $27,029,058, Hunter Roberts has declined the Debtor's request for additional compensation. Further, Hunter Roberts has declined to reduce the retainage amount of $1,332,564 due the Debtor and has not yet paid the October billings in the amount of $287,822 due the Debtor.

19. Absent a resolution of the Debtor's claim for additional compensation under the SJU Subcontract, the Debtor is unable to expend additional amounts of its limited resources to complete the remaining work under the SJU Subcontract and impairs its ability to fund the completion of its other projects.

20. The Debtor is also performing a review and analysis of each its other contracts to determine their profitability and to ascertain whether they should be assumed or rejected as the Debtor restructures its affairs.

21. The culmination of the above events caused the Debtor to seek protection under Chapter 11 in order to afford the Debtor the opportunity to reorganize its affairs under the provisions of the Bankruptcy Code.

## SUMMARY OF FIRST DAY MOTIONS

22. To minimize the adverse effects of the commencement of this case, the Debtor has requested a variety of relief in the First Day Motions filed concurrently herewith. I am familiar with the contents of each of the First Day Motions and, to the best of my knowledge, information, and belief, the facts set forth therein are true and correct. I believe that the relief sought therein is necessary to permit an effective transition into chapter 11. A description of the relief requested in and the facts supporting each of the First Day Motions is set forth below.

## FIRST DAY MOTIONS

### A. Motion of Debtor for an Order Pursuant to 11 U.S.C. § 363(c) and Fed. R. Bankr. P. 4001 Authorizing Debtor to Use Cash Collateral and Provide Adequate Protection

23. The Debtor requires the ability to use cash and the proceeds of existing accounts receivable to maintain the operation of its business and preserve its value as a going concern. These essential items, however, constitute part of Wells Fargo's collateral and, therefore, may not be used in support of the Debtor's ongoing business activities absent compliance with Section 363 of the Bankruptcy Code or the consent of Wells Fargo.

24. In accordance with Section 363 of the Bankruptcy Code, the Debtor requests that the Court authorize the Debtor's use of cash collateral for an interim period, pending a final hearing on the Debtor's use of cash collateral.

25. The Debtor requests authority to use cash collateral in the amount to be set forth on a budget which will be submitted to the Court on or before the hearing date for the cash collateral Motion. The use of cash collateral is necessary in order for the Debtor to be able to operate and pay its post-petition obligations as they come due.

**B. Motion of Debtor for an Order (A) Authorizing the Debtor to Pay Certain Prepetition (I) Wages, Salaries, Union Dues, Union Benefits, and Other Compensation and (II) Reimbursable Employee Expenses; (B) Confirming that the Debtor may Continue Prepetition Employee Programs in the Ordinary Course of Business; and (C) Directing Banks and Other Financial Institutions to Honor all Related Checks and Electronic Payment Requests**

26. As of the Petition Date, the Debtor employed thirty-seven (37) employees as follows: nine (9) office employees, three (3) shop employees and approximately (25) field employees (the "Employees").

27. To minimize the personal hardship that the Employees would suffer if prepetition wages and are not paid when due or as expected, and to maintain morale and stability in the Debtor's workforce during this critical time, by this Motion, the Debtor seeks authority to pay and honor, in its sole discretion, certain prepetition claims for, wages, salaries and other compensation, expense reimbursement, federal and state withholding taxes, and other amounts withheld (including garnishments), holidays, vacation and all other benefits that the Debtor has historically provided in the ordinary course of business and to pay all costs incident to the foregoing.

28. The Debtor will not pay any prepetition wage claims over the priority limit of 11 U.S.C. § 507(a)(4), presently $15,150.00.

**C. Motion of Debtor for Entry of an Order Providing Utility Companies with Adequate Assurance of Payment Pursuant to 11 U.S.C. § 366**

47. In connection with the operation of its business, the Debtor obtains electric, water, telephone, internet and other similar utility- services provided by a number of utility companies.

48. Preserving utility services on an uninterrupted basis is essential to the Debtor's ongoing operations and, therefore, to the success of its reorganization. Indeed, any interruption of utility services, even for a brief period of time, would disrupt the Debtor's operations. Such a result could seriously jeopardize the Debtor's reorganization efforts and, ultimately, its enterprise value and creditor recoveries. It is, therefore, critical that utility services continue uninterrupted during this chapter 11 case.

**D. Motion of Debtor for an Order Authorizing and Approving Maintenance and Use of Existing Bank Accounts; Use of Existing Books, Records, and Business Forms**

49. By this Motion, the Debtor seeks entry of an order authorizing the Debtor to maintain and use its existing bank accounts, in the name of "*Dan Lepore & Sons Company*" at Wells Fargo and at First Citizens Community Bank ("FCCB"), as well as its existing books, records, and business forms.

50. The use of the existing accounts at Wells Fargo and FCCB are essential to maintaining the Debtor's operations during this case and, therefore, to maximize the value of the Debtor's estate.

51. The Debtor uses the bank accounts to collect ACH payments from its customers and pay vendors, manage and support business operations, and pay its payroll.

**E. Motion for Entry of an Order Extending Debtor's Time to File Schedules and Statement of Financial Affairs Pursuant to Fed. R. Bank. P. 1007(c)**

52. By this Motion, the Debtor seeks the entry of an order extending the time to file its schedules ("Schedules") and statement of financial affairs ("SOFA") for an additional fourteen (14) days from December 5, 2025 to December 19, 2025.

53. While the Debtor is working diligently to gather the necessary information required for these filings, given the intervening Thanksgiving holiday, the complex nature of the Debtor's business affairs and the need to continue to operate the Debtor's business while the necessary information is being compiled, the Debtor simply will be unable to complete the preparation of the Schedules and SOFA within the fourteen (14) days of the commencement of the Chapter 11 Case.

54. Accordingly, the Debtor has requested an extension to and including December 19, 2025 to file its Schedules and SOFA.

**[SIGNATURE PAGE TO FOLLOW]**

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of November, 2025.

_______________________________, PRESIDENT
Gregory J. Lepore